## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Gregoire M. Nleme                             Case No. 15-cv-471 (JNE/TNL)

          Plaintiff,

v.                                  **REPORT &**
                                  **RECOMMENDATION**

Walden University

          Defendant.

---

Gregoire M. Nleme, 17382-30 Glacier Way, Rosemount, MN 55068[1] (*pro se* Plaintiff); and

Steven R. Anderson, Faegre Baker Daniels LLP, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402 (for Defendant).

---

This matter comes before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Walden University's Motion to Dismiss. (ECF No. 11). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Joan N. Ericksen, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF No. 16). Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss (ECF No. 11) be **GRANTED**.

---

[1] When this case was filed, Plaintiff resided at 922 Westcott Trail, Apt. 104, Eagan, MN 55123. In his most recent filing, (ECF No. 22), Plaintiff lists 17382-30 Glacier Way, Rosemount, MN 55068 as his current mailing address.

## I.   BACKGROUND

Plaintiff Gregoire M. Nleme brings the current suit alleging Defendant Walden University violated (1) Title IV of the Civil Rights Act of 1964, (2) Title VI of the Civil Rights Act of 1964, (3) the Equal Educational Opportunities Act of 1974 ("EEOA"), and (4) the Civil Rights Act of 1991 during Plaintiff's pursuit of a Doctorate of Business Administration degree at Walden University. Walden University is a "for-profit corporation organized under the laws of the State of Florida" and "is an institution of higher education [that] offers its students a distance-learning environment in which many of its programs are taught either completely or partially online." *Johnson v. Walden University, Inc.*, 839 F.Supp.2d 518, 522 (D. Conn. Dec. 9, 2011); *Gibson v. Walden University, LLC*, 66 F.Supp.3d 1322, 1323 (D. Or. Nov. 13, 2014); (*see also* Defendant's Corporate Disclosure Statement, ECF No. 10).

On February 9, 2015, Plaintiff filed this action and submitted an application to proceed *in forma pauperis* (IFP). (ECF Nos. 1, 2). On March 3, 2015, the Court denied Plaintiff's IFP application. (ECF No. 3). In that Order, the Court found that Plaintiff's Complaint "fail[ed] to allege facts that, if proved, would allow a factfinder to conclude that Walden University discriminated against Nleme because of his race." (ECF No. 3, at 2). The Court, however, did not dismiss Plaintiff's action and allowed him to amend his complaint. (ECF No. 3).

Plaintiff subsequently filed an Amended Complaint on April 13, 2015, including 101 pages of attachments. (ECF No. 4). Plaintiff next filed his "Affidavit Adding data to the Amended Complaint" on April 24, 2015, adding an additional 76 pages of exhibits.

(ECF No. 5). Neither of these two documents includes explicit references to the four statutory claims included in the Complaint. Following these filings, on May 1, 2015, Plaintiff paid the civil filing fee, thereby mooting his IFP application. (ECF No. 7).

On May 29, 2015, Defendant moved for dismissal of Plaintiff's case pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff failed to state a claim upon which relief could be granted. (ECF No. 11).[2] Defendant seeks dismissal with prejudice of Plaintiff's claims under Title IV of the Civil Rights Act of 1964, the Equal Educational Opportunities Act, and the Civil Rights Act of 1991. (Def.'s Mem., ECF No. 13). Defendant argues that none of those Acts apply to Defendant, a private, limited liability company lacking an employment relationship with Plaintiff. (Def.'s Mem. at 7, 9–11). With respect to Plaintiff's Title VI claim, Defendant seeks dismissal, arguing that Plaintiff did not sufficiently allege his race or unfavorable treatment based on race. (Def.'s Mem. at 8). Defendant further asserts that Plaintiff's Amended Complaint failed to cure the deficiencies in his Complaint identified by this Court in its Order denying Plaintiff's IFP application. (Def.'s Mem. at 11–12).

In response, Plaintiff filed his response opposing Defendant's motion to dismiss on June 14, 2015, including 209 pages of exhibits. (ECF No. 20). Defendant submitted its reply memorandum on June 26, 2015, arguing that Plaintiff did not dispute the insufficiency of his pleadings, thereby conceding that his Complaint and Amended Complaint fail to state a plausible claim for relief. (ECF No. 21, at 1–2). Defendant also

---

[2] Defendant also notes that Plaintiff failed to serve Defendant with the Amended Complaint or the "Affidavit Adding data to Amended Complaint." (ECF No. 13, at 3).

argues that information included by Plaintiff in his Response could not serve as an amendment to his Complaint. (ECF No. 21, at 2). On July 7, 2015, Plaintiff filed a response to Defendant's memorandum. (ECF No. 22). This Court held a hearing on August 5, 2015. (ECF No. 23). The Court waited thirty minutes before commencing the hearing, but Plaintiff failed to appear. (ECF No. 23).

## II.   PLAINTIFF'S PLEADINGS

As a threshold matter, the Court must determine what documents it may consider in deciding this motion to dismiss. Courts "generally may not consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim or for judgment on the pleadings." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). A court, "may, however, consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Greenman*, 787 F.3d at 887 (citing *Porous Media Corp.*, 186 F.3d at 1079). Thus, a court "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing *Porous Media Corp.*, 186 F.3d at 1079). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)). When evaluating a Rule 12(b)(6) motion, "the court has complete

discretion to determine whether or not to accept any material beyond the pleadings." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (quotation and citations omitted).

Here, Plaintiff has submitted multiple complaints, filings, and exhibits: Complaint, (ECF No. 1); Amended Complaint and attached exhibits, (ECF No. 4); "Affidavit Adding data to the Amended Complaint" and attached exhibits, (ECF No. 5); "Response to Walden University's Motion to Dismiss" and attached exhibits, (ECF No. 20); and "Response to the Walden University's reply to Gregoire Nleme first response to the Walden University's Motion to Dismiss the case," (ECF No. 22). After a review of Plaintiff's additional filings, the Court finds that these materials do not contradict the Complaint. The Complaint refers to material found in the Amended Complaint, Affidavit, Response, and the exhibits attached thereto. Therefore, these materials are necessarily embraced by the pleadings and the Court will consider the entirety of Plaintiff's filings in determining this motion to dismiss.[3]

## A. Complaint

In his Complaint, Plaintiff provides numerous allegations relating to what he perceives as "excessive wrong treatment from Walden University's Doctoral of Business Administration program leadership and doctoral thesis reviewers." (Compl. at 4, ECF No. 1). Plaintiff alleges there "have been repeated instances of clear discrimination, humiliations, and delays on [his] doctoral study caused by professors and leaders who

---

[3] While the Court has some doubt as to the authenticity of some documents, the Court's decision herein is not based on any factual determination of their authenticity. *See* note 5, *infra*.

either clearly ignored [him], or postponed the review of [his] doctoral study unnecessarily." (Compl. at 4). The majority of Plaintiff's Complaint recounts disputes between Plaintiff and Defendant's faculty concerning academic matters. (Compl. at 4–11). These disputes include the proper use of the terms "questionnaire survey," "survey," and "questionnaire," (Compl. at 5); what sources are properly used in academic writing, (Compl. at 6); the proper use of the first-person in academic writing, (Compl. at 5, 8, 10); the use of passive voice in academic writing, (Compl. at 8); the appropriate structure of a scale used in a study gathering data, (Compl. at 5, 7); the content and application of an evaluation rubric used to review Plaintiff's doctoral thesis, (Compl. at 6, 8–10); the Plaintiff's use of "cybernetics" as a theory in his doctoral thesis, (Compl. at 6); and the proper formatting of academic writing, (Compl. at 9). Plaintiff alleges unnecessary delays in review of his doctoral thesis by faculty members of Defendant due to the above-mentioned frequent, recurring disagreements that led to his inability to complete the requirements necessary to receive a doctorate. (Compl. at 6, 10–11). Furthermore, Plaintiff alleges that faculty members of Defendant made erroneous accusations of plagiarism against Plaintiff and that unauthorized changes were made to his written submissions. (Compl. at 9, 11).

In addition to the many academic disputes contained in the Complaint, Plaintiff alleges that faculty of Defendant described Plaintiff's work as containing "slangs" and that faculty made "jokes that [Plaintiff] was writing in French." (Compl. at 7). Similarly, Plaintiff states that he has "been subject of jokes in the classroom many times, all of which are treatments different from other students." (Compl. at 9). Plaintiff further

alleges he was subject to "[t]he logic of jokes, mail mistakes, and division among peers." (Compl. at 11). In describing this allegation, Plaintiff lists the use of the letter "d" to rank feedback, various email troubles causing delays, and the fact that faculty used peer reviewers which "led to clear resentments from some students one way or the other." (Compl. at 11).

Plaintiff requests relief for "unnecessary delays, unilateral treatment which is clearly discrimination, intimidations, and coercion to write what the reviewer or the chair wants even when what they want is against the rubric, which is the documented Walden University's Standard." (Compl. at 13). Plaintiff seeks damages for "unnecessary tuition paid," emotional distress, reputational damage, the inability to graduate, and the loss of employment opportunities. (Compl. at 13). Plaintiff also seeks relief in requiring Walden University to permit Plaintiff to complete his "doctorate program normally with unnecessary delays based on wrong assertions and unfair decisions." (Compl. at 13).

### B. Amended Complaint

Following the denial of Plaintiff's IFP application, Plaintiff submitted an "Amended Complaint" and various exhibits. (Am. Compl., ECF No. 4). The Amended Complaint contains statements about disputes surrounding the use of the first-person in academic writing and the use of the terms "survey" and "questionnaire." (Am. Compl. at 1–2). Plaintiff alleges that faculty of Defendant delayed their review of his written assignments and that Plaintiff's need to change doctoral chairs also resulted in delays in his ability to complete the work required for his doctorate. (Am. Compl. at 2–3).

As in the Complaint, Plaintiff requests relief for emotional distress, loss of employment opportunities, and "reparation for tuition." (Am. Compl. at 3–4). He also requests that he be "allowed to graduate." (Am. Compl. at 4). Attached to the Amended Complaint, Plaintiff filed 101 pages of exhibits. These exhibits consist mostly of emails and attachments to those emails, showing the extent of Plaintiff's academic disputes. (Am. Compl., ECF No. 4–2).

### C. Affidavit Adding data to Amended Complaint

Plaintiff additionally filed what he entitled an "Affidavit Adding data to Amended Complaint" and exhibits. (Nleme Aff., ECF No. 5). This document parrots the allegations contained in the Complaint and Amended Complaint. Mainly, Plaintiff complains of a dispute over the use of the first person in academic writing, delays in the review of his work, an enrollment snafu causing delay, delays due to Plaintiff changing doctoral chairs, delays due to communication problems between faculty, a dispute over the use of the term "questionnaire survey," and the use of a certain sized study scale for data-gathering purposes. (Nleme Aff.). Plaintiff attached 76 pages of emails and email attachments to his Affidavit. (Nleme Aff., ECF No. 5–1).

### D. Response to Walden University's Motion to Dismiss

In response to Defendant's Motion to Dismiss, Plaintiff filed a Response that includes the allegations set forth in the Complaint, Amended Complaint, and Affidavit. (Resp., ECF No. 20). Plaintiff, for the first time in this suit, alleges "[t]here are two examples were [sic] committee member linked there [sic] wrong denial to move the proposal forward to Gregoire [sic] ethnical background." (Resp. at 4–5). Plaintiff then

8

lists the disputes over the term "questionnaire survey" and the use of "slangs." (Resp. at 4–5). Plaintiff alleges this "is a case where a student is mistreated as never seen before, singled out, wrongly portrayed as slow in his intellect, and made a mockery off [sic] because of his background as someone who did not grow up in the United States of America." (Resp. at 5). For these alleged actions, Plaintiff requested, as in prior pleadings, reparations for emotional distress, tuition, reputational damage, and loss of employment opportunities. (Resp. at 5). Attached to his Response, Plaintiff filed 209 pages of exhibits, including the entirety of his doctoral thesis. (Resp., ECF No. 20–1, 20–2, 20–3).

### E.  Plaintiff's Response to Defendant's Reply

Lastly, Plaintiff filed what he called his "Response to the Walden University's reply to Gregoire Nleme first response to the Walden University's Motion to Dismiss the case." (Final Resp., ECF No. 22). In this filing, Plaintiff attempts to demonstrate how the information he included in his Response relates back to his Complaint and Amended Complaint. (Final Resp. at 1).

## III.   MOTION TO DISMISS PLAINTIFF'S CLAIMS

### A.  Legal Standard

Defendant Walden University has moved for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In deciding a 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Furthermore, the

court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted).

A complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *accord Zink*, 783 F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotations omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such

complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### B.  Title IV of the Civil Rights Act of 1964

Title IV of the Civil Rights Act of 1964, Pub. L. No. 88–352, §§ 401–410, 78 STAT. 241, 246–249 (1964), "was enacted not to limit but to define the role of the Federal Government in the implementation of the *Brown I* decision." *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971). Title IV "authorizes the Commissioner of Education to provide technical assistance to local boards in the preparation of desegregation plans, to arrange 'training institutes' for school personnel involved in desegregation efforts, and to make grants directly to schools to ease the transition to unitary systems." *Id.* at 16–17; *see* 42 U.S.C. §§ 2000c-2–2000c-5. Title IV creates a cause of action for the Attorney General to initiate federal desegregation suits after receipt of a complaint and other procedural standards are satisfied. 42 U.S.C. § 2000c-6. While Title IV does not "affect adversely the right of any person to sue for or obtain relief in any court against discrimination in public education," 42 U.S.C. § 2000c-8, it "does not . . . create a private cause of action or, at least, there is no indication in the statute there is authorization for private causes of action." *Brown v. Texas State Univ. Sys. Bd. of Regents*, 2013 WL 6532025, at *5 (W.D. Tex. Dec. 12, 2013).

Plaintiff, as a private individual, has no right to bring suit directly under Title IV of the Civil Rights Act of 1964. Even if Plaintiff could bring suit under Title IV, he has failed to allege sufficient facts that would entitle him to relief. By definition, a public college is

> any institution of higher education or any technical or vocational school above the secondary school level, provided that such public school or public college is operated by a State, subdivision of a State, or governmental agency within a State, or operated wholly or predominantly from or through the use of governmental funds or property, or funds or property derived from a governmental source.

42 U.S.C. § 2000c(c). As admitted by both Defendant and Plaintiff, Walden University is a private, limited liability company. (Def.'s Mem. at 10; Nleme Aff., ECF No. 5–1 at 66). Although Defendant potentially could qualify as a public college under Title IV if it is "operated wholly or predominantly from or through the use of governmental funds or property, or funds or property derived from a governmental source," Plaintiff has not alleged such facts. Consequently, Plaintiff has not pleaded facts that demonstrate Title IV's applicability to Defendant.

"When a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate." *Newman v. JP Morgan Chase Bank, N.A.*, 81 F.Supp. 735, 746 n.7, 14-cv-2944 (MJD/JSM) (D. Minn. Jan. 26, 2015) (citing *McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009) ("To the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice."). Because this Court cannot identify

any set of facts that would allow Plaintiff relief under this statute, this Court recommends that Plaintiff's claim for relief under Title IV of the Civil Rights Act of 1964 be dismissed with prejudice.

### C.  The Equal Educational Opportunities Act of 1974

Under the EEOA, "[n]o State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin." 20 U.S.C. § 1703. The language of the EEOA "obviously reflects Congress's intention to hold the states and their agencies liable." *United States v. City of Yonkers*, 96 F.3d 600, 619 (2d Cir. 1996); *see Mumid v. Abraham Lincoln High School*, 618 F.3d 789, 797 (8th Cir. 2010) ("The EEOA describes six ways in which *a State* must not deny equal educational opportunity on account of race, color, or national origin.") (emphasis added); *see also Horne v. Flowers*, 557 U.S. 433, 440–441 (2009) ("By simply requiring *a State* to take appropriate action to overcome language barriers without specifying particular actions that *a State* must take, Congress intended to leave *state and local educational authorities* a substantial amount of latitude in choosing the programs and techniques they would use to meet their obligations under the EEOA.") (emphasis added) (quotation and citation omitted).

Plaintiff fails to allege facts that entitle him to relief. Neither Plaintiff nor Defendant identifies Defendant, a limited liability company, as a "State" or other local educational authority. As a non-State entity, Defendant is not subject to liability under the EEOA. Consequently, Plaintiff cannot provide sufficient facts that, if proven, would entitle him to relief under the EEOA. Thus, this Court recommends that Plaintiff's claim

under the EEOA be dismissed with prejudice. *Newman*, 81 F.Supp. at 746 n.7; *McLean*, 566 F.3d at 400.

### D.  The Civil Rights Act of 1991

The Civil Rights Act of 1991 amended the Civil Rights Act of 1964 to, *inter alia*, "strengthen and improve Federal civil rights laws [and] to provide for damages in cases of intentional employment discrimination." Pub. L. 101–166, 105 STAT. 1071 (1991). Section 102, codified at 42 U.S.C. § 1981a,[4] provides for damages in cases of unlawful intentional discrimination in employment. Section 103, codified at 42 U.S.C. § 1988, provides for the award of attorney's fees.

Plaintiff's pleadings demonstrate that he was a student at Walden University, not an employee, and neither Plaintiff nor Defendant alleges an employment relationship between Plaintiff and Defendant. (*See, e.g.*, Compl. at 9, 11; ECF No. 13 at 11). Given the absence of an employment relationship between Plaintiff and Defendant, Plaintiff is unable to allege any facts that would entitle him to relief under the Civil Rights Act of 1991. Accordingly, this Court recommends that Plaintiff's claim under the Civil Rights Act of 1991 be dismissed with prejudice. *Newman*, 81 F.Supp. at 746 n.7; *McLean*, 566 F.3d at 400.

### E.  Title VI of the Civil Rights Act of 1964

Pursuant to Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or

---

[4] Plaintiff cites both Section 102 and Section 1977A, which are the same part of the same law. Section 102 provides for the insertion of Section 1977A into the Civil Rights Act of 1964. Section 1977A was then codified as 42 U.S.C. § 1981a.

14

be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To establish a "prima facie case of discrimination under Title VI, the plaintiff must show (1) that the defendant is receiving federal funds, (2) that the plaintiff was discriminated against, and (3) the plaintiff's race, color, or national origin was the motive for the discriminatory conduct." *Scarlett v. School of Ozarks, Inc.*, 780 F.Supp. 924, 933–934 (W.D. Mo. Jan. 24, 2011); *Tatum v. St. Louis Cmty. Coll.*, 2013 WL 171072, at *3 (E.D. Mo. Jan. 16, 2013), *aff'd* (8th Cir. Apr. 12, 2013); *see Thompson v. Bd. of the Special School Dist. No. 1 (Minneapolis)*, 144 F.3d 574, 581 (8th Cir. 1998). Title VI "prohibits only intentional discrimination." *Mumid*, 618 F.3d at 794. Thus, "[p]roof of disparate impact is not sufficient." *Id.* (citing *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001)).

Title VI's definition of "program or activity" means "all of the operations of . . . a college, university, or other postsecondary institution, or a public system of higher education . . . any part of which is extended Federal financial assistance." 42 U.S.C. § 2000d-4a(2)(A). It also applies to "an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . which is principally engaged in the business of providing education . . ." 42 U.S.C. § 2000d-4a(3)(A)(ii). "Receipt of federal financial assistance by any student or portion of a school thus subjects the entire school to Title VI coverage." *Radcliff v. Landau*, 883 F.2d 1481, 1483 (9th Cir. 1989); *Tatum*, 2013 WL 171072, at *2. Defendant "does not dispute that it receives federal assistance in the form of student financial aid or that it is subject to Title VI." (ECF No. 13, at 8); *see also Walters v. Walden University, LLC*, 2015 WL 6550754, at *1 (W.D. Wash. Oct. 28,

2015) ("Defendant Walden University is a private university *that receives federal funds* and whose classes are conducted primarily online.") (emphasis added).

As a recipient of federal financial assistance, Defendant is subject to Title VI. The pleadings submitted by Plaintiff, however, fail to allege sufficient facts that, if proven, would entitle Plaintiff to relief under Title VI. To begin with, Plaintiff does not specifically identify himself as a member of a protected class under Title VI. Importantly, even if the Court assumes for purposes of this analysis that Plaintiff may be a member of a protected class under Titled VI, he fails to identify how he was discriminated against based on his membership in that class. In his Complaint, Plaintiff's chief grievances are academic disputes. The only claim in Plaintiff's Complaint that even resembles Title VI discrimination is the allegation that "Dr. DeSouza claimed that I was using slangs, which was similar to Dr. Davis' jokes that I was writing in French." (Compl. at 7). "While Title VI prohibits discrimination on the basis of national origin, language and national origin are not interchangeable." *Mumid*, 618 F.3d at 795. Thus, comparing Plaintiff's writing style to the French language or insinuating that French was his native tongue does not provide sufficient basis upon which Plaintiff may rest a Title VI claim for discrimination on the basis of national origin.

Even with the guidance of the Order denying his IFP status, Plaintiff failed to demonstrate in his Amended Complaint or Affidavit how he was treated differently on account of his race, color, or national origin. The closest Plaintiff gets to alleging discrimination on the basis of race, color, or national origin is a claim that a faculty reviewer called Plaintiff "boy" in some of his electronic comments to Plaintiff's doctoral

thesis. (Am. Compl., ECF No. 4-2 at 64, 70). Plaintiff did not draw any attention to this occurrence; instead, the Court came across it in sifting through his filings. While Plaintiff included 386 pages of emails and other documents as exhibits, the actual comments where Plaintiff was allegedly referred to as "boy" are noticeably absent.[5] The only references to the term "boy" are attributable to Plaintiff, not a member of Defendant's faculty. With the absence of the actual comment and the lack of any guidance from Plaintiff in his pleadings, the Court has no context in which to examine the use of this term. *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (*per curiam*) (holding that although the use of the word "boy" will not always be evidence of racial animus, the word must be considered in context). Because its contextual use was not pleaded or included, the Court cannot infer that it was used in a manner that would provide evidence of racial animus for purposes of his claims. *Id.*; *see Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1035 (8th Cir. 2006).

Not until Defendant moved to dismiss Plaintiff's claims and explained its supporting reasoning in its memorandum, did Plaintiff even allege a connection between his perceived mistreatment and any status in a protected class. Plaintiff alleges "[t]here are two examples were [sic] committee member linked there [sic] wrong denial to move the proposal forward to Gregoire [sic] ethnical background," listing again his disputes over the term "questionnaire survey" and the use of "slangs." (Resp. at 4–5). Plaintiff alleges this "is a case where a student is mistreated as never seen before, singled out,

---

[5] The Court notes that throughout Plaintiff's exhibits, many email chains end abruptly, do not include the original email that was responded to, or do not include the responses of the recipients. In reviewing the exhibits, the Court has drawn reasonable inferences in Plaintiff's favor.

wrongly portrayed as slow in his intellect, and made a mockery off [sic] because of his background as someone who did not grow up in the United States of America." (Resp. at 5). Even if the Court inferred Plaintiff's national origin is something other than American and that French is his native language, this lacks the sufficient factual enhancement necessary for a cognizable claim even under the more lenient standard applied to *pro se* plaintiffs. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Plaintiff's pleadings do not plausibly give rise to an entitlement to relief because he does not allege he was intentionally discriminated against based on his status as a non-American Francophone, therefore depriving this Court of the ability to make a reasonable inference that Defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 664. Plaintiff, while upset by the doctoral process, has provided nothing more than speculative claims that his troubles were caused by professors singling him out due his "ethnical background." *Twombly*, 550 U.S. at 555. Indeed, the brunt of Plaintiff's dispute is academic in nature and the emails provided by Plaintiff show he engaged in many debates with his faculty that are normal for an academic setting, especially where advanced degrees are sought. Thus, the Court finds that Plaintiff fails to state a claim upon which relief may be granted. Given that re-pleading would not necessarily be futile, though, this Court recommends that Plaintiff's claims with respect to Title VI be dismissed without prejudice.

## IV.   RECOMMENDATION

Based on the foregoing and all of the files, record, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss (ECF No. 11) be **GRANTED** as set forth herein.

2.  Plaintiff's claims under Title IV of the Civil Rights Act of 1964, the Equal

Educational Opportunities Act of 1974, and the Civil Rights Act of 1991 be

**DISMISSED WITH PREJUDICE**.

3.  Plaintiff's claim under Title VI of the Civil Rights Act of 1964 be **DISMISSED**

**WITHOUT PREJUDICE**.


Date: November 25, 2015                          *s/ Tony N. Leung*
                                                 Tony N. Leung
                                                 United States Magistrate Judge

                                                 *Nleme v. Walden University*
                                                 Case No. 15-cv-471 (JNE/TNL)


## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.